UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------X

MICHAEL MAIGLOW,

                                  Plaintiff,

          -against-


CITY OF NEW YORK, a municipal entity; BOARD OF
EDUCATION OF THE CITY SCHOOL DISTRICT OF THE
CITY OF NEW YORK, a municipal corporation; NEW YORK
CITY DEPARTMENT OF EDUCATION; NEW YORK CITY
COMMUNITY SCHOOL DISTRICT 19; CARMEN FARIÑA,
individually and in her capacity as Chancellor of the New York
City Department of Education; JOYCE STALLINGS-HARTE,
individually and in her capacity as Superintendent for New York
City Community School District 19, NEW YORK CITY POLICE
DEPARTMENT OFFICER ESSIG, and JOHN and/or JANE DOES
1, 2, 3, etc., (whose identity are unknown but who are known to be
personnel of the New York City Police Department), all of whom
are sued in their individual and their official capacities,

                                  Defendants.

-------------------------------------------------------------------------------- X

**COMPLAINT**


**JURY TRIAL
DEMANDED**

          Plaintiff MICHAEL MAIGLOW, by his attorneys, Beldock Levine & Hoffman LLP, as

and for his complaint, allege as follows:

**PRELIMINARY STATEMENT**

          1.          This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State

law for injuries plaintiff suffered from the unconstitutional conduct of defendants The CITY OF

NEW YORK, BOARD OF EDUCIONATION OF THE CITY SCHOOL DISTRICT OF THE

CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION; NEW YORK

CITY COMMUNITY SCHOOL DISTRICT 19, NEW YORK CITY DEPARTMENT OF

EDUCATION CHANCELLOR CARMEN FARIÑA, FORMER NEW YORK CITY

COMMUNITY SCHOOL DISTRICT SUPERINTENDENT JOYCE STALLINGS-HARTE,

NEW YORK CITY POLICE DEPARTMENT OFFICER ESSIG, and NEW YORK CITY

POLICE DEPARTMENT OFFICER JOHN and/or JANE DOES 1, 2, 3, etc.

2.     On September 17, 2014, Michael Maiglow, along with students, parents, and other I.S. 292 staff members, participated in a demonstration in support of the school's former principal. Following the demonstration, Community School District 19 ("CSD 19") Superintendent Joyce Stallings-Harte filed false allegations against the demonstration's participants with Department of Education ("DOE") investigatory bodies and the New York City Police Department ("NYPD"). All of Superintendent Stallings-Harte's claims were later deemed unsubstantiated by the DOE and NYPD. When Mr. Maiglow received a letter from the DOE's Office of Special Investigation stating that the charges Superintendent Stallings-Harte's made against him were unsubstantiated, he sent her an email seeking an apology. Instead, Superintendent Stallings-Harte filed a false report with the NYPD that led to Mr. Maiglow's false arrest and unlawful imprisonment. In March 2016, Superintendent Stallings-Harte posted a photo of Mr. Maiglow while he was incarcerated on the bulletin board located in CSD 19's reception area, with information about him and a post-it note stating "He's back at it."

3.     Plaintiff now seeks redress for the substantial injuries he suffered: (i) compensatory damages for psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

## JURISDICTION

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

5.      Supplemental jurisdiction is conferred by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

6.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to Plaintiff's claims took place.

## JURY DEMAND

7.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

8.      Plaintiff MICHAEL MAIGLOW is a citizen of the United States and is and was at all times relevant to this Complaint a resident of the Hamlet of Massapequa, Nassau County, and State of New York.

9.      Defendant CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

10.     Defendant BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK ("the Board") is a municipal entity established and continued by New York Education Law Articles 52 and 52-A.

11.     Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE"), is a department of the City of New York.

12.     Defendant NEW YORK CITY COMMUNITY SCHOOL DISTRICT 19 ("District 19") is a municipal entity established by New York Education Law Article 52-A.

13.     Defendant CARMEN FARIÑA is, and was at all relevant times, the Chancellor of the DOE.

14.     The DOE Chancellor serves at the pleasure of and is employed by the mayor of the City of New York.  The DOE Chancellor is an ex officio member of the Board and the chief executive officer for the New York City School District.  The DOE Chancellor is responsible for establishing and implementing policies of the DOE and the City.

15.     Defendant JOYCE STALLINGS-HARTE was at all relevant times herein the Superintendent for New York City Community School District 19.

16.     New York City Community School District superintendents are responsible for overseeing and directing operations of the district schools. Their duties include the duty to appoint, define the duties of, assign, promote, and discharge all employees; appoint supervisory personnel; appoint principals and assistant principals; review, modify and approve school-based budgets; maintain discipline in the educational and other facilities under the jurisdiction of the district; employ or retain counsel to be the district's attorney and counsel; and take all necessary steps to ensure the integrity of community district operations, consistent with standards, policies, objectives, and regulations of the city district.

17.     Defendants FARIÑA and STALLINGS-HARTE possess final policymaking authority to establish municipal policy with respect to the actions at issue.

18.     Upon information and belief, defendants FARIÑA and STALLINGS-HARTE are citizens of the United States and residents of the State of New York.

19.     At all times relevant herein, defendants FARIÑA and STALLINGS-HARTE acted under color of state law.

4

20.     At all times relevant herein, defendants FARIÑA and STALLINGS-HARTE were agents, employees, and/or officers of the City, the Board, District 19 and/or the DOE.

21.     At all times relevant herein, defendants FARIÑA and STALLINGS-HARTE acted in their capacities as agents, employees, and/or officers of the City, the Board, District 19 and/or the DOE, and within the course and scope of their employment.

22.     The City, the Board, District 19, and/or the DOE are vicariously liable under the doctrine of r*espondeat superior* with respect to the actions at issue of defendants FARIÑA and STALLINGS-HARTE.

23.     At the times relevant herein, defendants FARIÑA and STALLINGS-HARTE violated clearly established rights and standards under the First and Fourteenth Amendment to the United States Constitution and Article I, §§ 6, 8, and 9 of the New York Constitution, of which reasonable public officials in their respective circumstances would have known.

24.     The City is authorized by law to maintain a police department, and does maintain the NEW YORK CITY POLICE DEPARTMENT ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

25.     Defendants NYPD Officer ESSIG and NYPD Officers "JOHN and/or JANE DOES" 1, 2, 3, etc. are NYPD Officials who unlawfully detained plaintiff without any suspicion of illegal activity and lodged false criminal charges against him.

26.     Upon information and belief, defendants ESSIG and DOES are still New York City Police Department Officers.

27.     At all times relevant herein, defendants ESSIG and DOES have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or

officers of the City and/or the NYPD and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

28.     At all times relevant herein, defendants ESSIG and DOES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW AND NEW YORK EDUCATION LAW

29.     On March 31, 2016, plaintiff filed a Verified Petition in New York State Supreme Court requesting an order, pursuant to New York General Municipal Law § 50-e(5), and New York Education Law § 3813(2-a), deeming the claims in his Notice of Claim timely served nunc pro tunc and/or for leave to serve a late notice of claim.

30.     Plaintiff served a Notice of Claim upon the City of New York, the New York City Department of Education, and Carmen  Fariña by personal delivery on April 1, 2016 and on Joyce Stallings-Harte by personal delivery on April 4, 2016.

31.     The Court heard oral argument on plaintiff's Petition on July 21, 2016.

32.     On August 24, 2016 the Court issued an order granting plaintiff's request deeming his Notice of Claim timely served *nunc pro tunc* and/or leave to serve a late notice of claim.

33.     A Notice of Entry as to the Court's August 24, 2016 decision was served upon the City of New York on August 26, 2016.

34.     On November 2, 2016, plaintiff attended an examination pursuant to New York General Municipal Law § 50-h.

35.     More than thirty days have elapsed since plaintiff served his Notice of Claim and he has not received offer of adjustment or payment of his claim.

## STATEMENT OF FACTS

36.     Plaintiff Michael Maiglow was a DOE Social Studies teacher, who served nearly 17 years at Intermediary School ("I.S.") 292 in East New York, Brooklyn.

37.     I.S. 292 is a school located in Community School District 19.

38.     On September 17, 2014, at approximately 7:30 AM, plaintiff participated in a demonstration in support of Gloria Williams Nandan.

39.     Ms. Williams had served as I.S. 292's interim principal for several years, but had not been brought back for the 2014-2015 school year.

40.     After plaintiff learned that Ms. Williams would not be returning to I.S. 292, he began seeking a transfer to another DOE school.

41.     Plaintiff was contacted by other DOE schools regarding a potential transfer, at least one of which was very interested in hiring plaintiff.

42.     The demonstration in support of Ms. Williams took place on the sidewalk in front of I.S. 292 and included students, parents, and I.S. 292 staff members.

43.     During the demonstration, Plaintiff was interviewed by News 12 Brooklyn.

44.     Plaintiff stated to the News 12 reporter, "We are the only school in District 19 that is highly effective. Why would they get rid of our principal? It makes absolutely no sense."

45.     While plaintiff was speaking with the News 12 reporter, Superintendent Stallings-Harte drove by the demonstration in her car.

46.     As Superintendent Stallings-Harte drove by, plaintiff waved and commented to the reporter, "Notice how she drove off."

47.     Both of plaintiff's comments were aired as part of News 12 report on the demonstration at I.S. 292.

7

48.     After participating in the demonstration, plaintiff reported to work on time and carried out his everyday responsibilities as scheduled.

49.     On or about September 17, 2014, plaintiff heard the News 12 report of the demonstration in support of Ms. Williams playing in the principal's office.

50.     Upon information and belief, Superintendent Stallings-Harte was in the principal's office watching the News 12 report.

51.     Upon information and belief, on or about September 17, 2014, defendant Stallings-Harte falsely reported to DOE Chancellor Carmen Fariña and/or Deputy Chancellor Dorita Gibson, that plaintiff harassed her during the demonstration and that a former I.S. 292 principal and current DOE consultant, Everett Hughes, who was working with the current I.S. 292 principal on September 17th, caused a riot. None of these things were true.

52.     Upon information and belief, DOE Chancellor Carmen Fariña and/or Deputy Chancellor Dorita Gibson conveyed Superintendent Stallings-Harte's report to the police.

53.     Upon information and belief, Superintendent Stallings-Harte made a false report to the NYPD, claiming that Mr. Hughes harassed her at the demonstration. This was not true.

54.     Mr. Hughes spoke with a member of the NYPD later that day and was told that no charges would be pursued because the police did not believe Superintendent Stallings-Harte's story.

55.     Upon information and belief, on September 22, 2014, Superintendent Stallings-Harte filed a false report with the DOE's Office of Special Investigations ("OSI") claiming that Mr. Maiglow abused DOE time and harassed her during the September 17th demonstration. None of these things were true.

56.     Upon information and belief, on or about September 22nd, Superintendent Stallings-Harte filed false allegations with OSI against at least three other I.S. 292 employees regarding their lawful participating in the September 17th demonstration.

57.     On or about September 29, 2014, I.S. 292's acting interim principal handed plaintiff a letter stating that OSI was investigating allegations made against him, but did not specify the nature of the allegations or who had made them.

58.     After receiving the letter from OSI, plaintiff experienced a panic attack and became violently ill, requiring him to seek immediate medical attention and take three days off from work.

59.     Following plaintiff's return to work, he continued to experience panic attacks on nearly a daily basis because of the OSI investigation.

60.     After the OSI investigation was opened, plaintiff was flagged in the DOE system and not allowed to seek a transfer to another DOE school.

61.     Plaintiff attended a hearing in November 2014 with OSI where he learned that Defendant Stallings-Harte falsely alleged that he, *inter alia*, hit, punched, kicked and spit at her car during the September 17th demonstration, that plaintiff participated in the demonstration when he should have been teaching, and that Superintendent Stallings-Harte was frightened and intimidated by plaintiff's conduct. None of these things were true.

62.     Plaintiff instructed the OSI investigators to watch the News 12 report because it clearly showed the time in which the demonstration took place and that he was never close to Superintendent Stallings-Harte's car.

63.     Upon information and belief, OSI and/or the DOE's School Safety Division ("SSD") concluded their investigations on or before January 2015 and found that Superintendent Stallings-Harte's accusations as to what occurred at the demonstration on September 17, 2014 at

I.S. 292 were unsubstantiated with regards to Mr. Maiglow, Mr. Hughes, and at least three other I.S. 292 educators.

64.     Upon information and belief, Chancellor Fariña received notice that the OSI investigation into Superintendent Stallings-Harte's false allegations were all unsubstantiated.

65.     Upon information and belief, Superintendent Stallings-Harte filed numerous other unsubstantiated complaints against DOE employees during her tenure as Community School District 19 Superintendent.

66.     Upon information and belief, Chancellor Fariña did nothing to discipline Superintendent Stallings-Harte for filing false complaints against Mr. Maiglow, Mr. Hughes, and at least three other I.S. 292 educators.

67.     In February 2015, plaintiff's physician recommended plaintiff take medical leave because of the stress and panic attacks he experienced as a result of Superintendent Stallings-Harte's false allegations and the subsequent OSI investigation.

68.     On February 27, 2015, plaintiff attended a meeting with his union representative and I.S. 292's interim acting principal regarding a long-term medical leave.

69.     Up to that time in the 2014-15 school year, plaintiff used approximately 25 sick days because of the stress and panic attacks he experienced following the false allegations defendant Stallings-Harte's lodged against him.

70.     Plaintiff filed his Family Medical Leave Act application, complete with a letter from his physician, and took medical leave from I.S. 292 effective February 28, 2015.

71.     Plaintiff was granted early retirement by the DOE on March 19, 2015 because of the medical condition he was suffering from as a result the false allegations Superintendent Stallings-Harte had made against him.

72.     On April 8, 2015, Mr. Hughes served a Notice of Claim upon *inter alia*, Superintendent Stallings-Harte and Chancellor  Fariña for the injuries he suffered as a result of Superintendent Stallings-Harte's false allegations.

73.     On April 9, 2015, Mr. Hughes filed a Petition in New York State Supreme Court requesting an order deeming the claims he made in his Notice of Claim timely served nunc pro tunc and/or for leave to serve a late notice of claim.

74.     An article reporting Mr. Hughes' State Supreme Court Petition appeared in the New York Post and on their website.

75.     In May through August 2015, plaintiff sent several emails to the DOE and to Chancellor Fariña stating that Superintendent Stallings-Harte had filed multiple false complaints against him.

76.     On September 9, 2015, plaintiff received a copy of the OSI report that found all of Superintendent Stallings-Harte's allegations against him unsubstantiated.

77.     The OSI report also stated that Superintendent Stallings-Harte's false allegations against at least three other people regarding their conduct during the demonstration on September 17, 2014 were also unsubstantiated.

78.     After plaintiff received a copy of the OSI report finding Superintendent Stallings-Harte's allegations unsubstantiated, he filed a complaint with OSI against Superintendent Stallings-Harte accusing her of, *inter alia,* harassment, abuse of authority, violation of chancellor's regulations, slander, and defamation.

79.     OSI did not respond to plaintiff's complaint against Superintendent Stallings-Harte and, upon information and belief, OSI did not investigate plaintiff's allegations.

80.     On September 10, 2015, Mr. Maiglow emailed Superintendent Stallings-Harte seeking an apology for filing a false report against him.

81.     Superintendent Stallings-Harte did not respond to Mr. Maiglow's September 10th email.

82.     On September 11, 2015, Mr. Hughes filed a lawsuit in the Eastern District of New York, 15-cv-5269, against, *inter alia,* Chancellor Fariña and Superintendent Stallings-Harte, for injuries he sustained as a result of the false allegations Superintendent Stallings-Harte made against him.

83.     On September 17, 2015, Mr. Maiglow sent Superintendent Stallings-Harte a second email stating that because she did not apologize for filing a false police report he intended to file an OSI and SSD report against her, as well as report her conduct to the media.

84.     Superintendent Stallings-Harte did not respond to Mr. Maiglow's September 17th email.

85.     Upon information and belief, on September 17, 2015, at approximately 1:00 PM, Superintendent Stallings-Harte, from her office located inside Community School District 19's district headquarters, called the NYPD and falsely alleged that plaintiff had sent her threatening and intimidating email messages.

86.     Upon information and belief, NYPD Sergeant William Rezek and Officer Johnny Muniz reported to Superintendent Stalling-Harte's office and took her statement, but did not view any of the allegedly intimidating and/or threatening emails.

87.     Upon information and belief, Superintendent Stallings-Harte falsely stated to the responding officers that Mr. Maiglow sent her "three intimidating/threatening" emails that

indicated that he "knows where [her] family live (sic), where they vacation and what car she drives."

88.     On September 22, 2015, Mr. Maiglow received a phone call from NYPD Officer Essig stating that a complaint had been filed against him for sending threatening emails, but did not state who had made the complaint.

89.     Officer Essig stated that if Mr. Maiglow did not turn himself in at the 75th Precinct, a warrant would be issued for his arrest.

90.     Plaintiff later learned that the complaint Office Essig called about had been filed by Superintendent Stallings-Harte.

91.     Later that day, Mr. Maiglow's lawyer called Officer Essig and arranged for Mr. Maiglow to turn himself in the following morning.

92.     On September 23rd, at approximately 8:30 AM, plaintiff arrived at the 75th Precinct, where he was quickly searched and placed alone in a small holding cell on the second floor.

93.     Approximately 30 minutes later, Officer Essig came to the door and told plaintiff, in sum and substance, "I need to take a picture of you for identification purposes."

94.     Officer Essig then pulled out his cell phone and took a picture of plaintiff.

95.     Upon information and belief, Officer Essig sent a copy of this picture to Superintendent Stallings-Harte.

96.     Shortly thereafter, plaintiff was fingerprinted and his mug shot was taken.

97.     Plaintiff was then placed in a basement holding cell, where he was detained from approximately 9:30 AM to 5:30 PM.

98.     During this time he had requested food on several occasions.

99.     Plaintiff was never provided food and was only given one bottle of water while he was in custody at the 75th Precinct.

100.    At approximately 5:30 PM, plaintiff was removed from the 75th Precinct's holding cell, handcuffed, and taken by van to Central Booking.

101.    After being processed at Central Booking, plaintiff was taken to a general holding cell.

102.    Plaintiff had not taken his prescription medication before turning himself and began to fear that he would not be released in time to take his daily prescriptions.

103.    Plaintiff made several requests for his prescribed medicine to Central Booking officers.

104.    The officers ignored plaintiff's requests.

105.    After another detainee in plaintiff's holding cell clogged a toilet with garbage bags and repeatedly flushed the toilet, the cell became flooded with toilet water and fecal matter and everyone in that holding cell was taken to a different holding cell.

106.    After plaintiff was taken to the second holding cell he began experiencing panic attacks.

107.    At one point when plaintiff was in a holding cell, another detainee removed a condom from his anal cavity, removed a white powdery substance from the condom, and snorted it up his nose.

108.    While plaintiff was detained in the second holding cell, one of his former students, who was working as an EMT, responded to a call regarding another detainee's leg, which was leaking a pink liquid.

109.    Plaintiff's former student knew that plaintiff suffered from several medical conditions and asked if he had been given his medications.

110.    Plaintiff responded that he had not.

111.    At approximately 10:30 PM, an officer yelled into the holding cell, in sum and substance, "You guys aren't getting out tonight."

112.    Plaintiff approached the officer and asked where he was going to sleep.

113.    The officer responded, in sum and substance, "On the fucking floor."

114.    At approximately 1:10 AM the following morning, Sgt. Armstrong stood at the front of the holding cell and yelled plaintiff's name.

115.    Plaintiff approached Sgt. Armstrong and identified himself.

116.    Sgt. Armstrong told plaintiff, in sum and substance, "You are being released. You should have never been arrested."

117.    Sgt. Armstrong then led plaintiff to Central Booking's back exit and told him, in sum and substance, "It's like this never happened."

118.    Plaintiff was not read his *Miranda* rights the entire time that he was in custody.

119.    Plaintiff was not told why he was arrested the entire time he was in custody.

120.    After being released from Central Booking, plaintiff hailed a cab that drove him back to his Nassau County home.

121.    In late September 2015, plaintiff filed a Freedom of Information Law ("FOIL") request for his arrest report.

122.    On February 23, 2016 plaintiff received a response to his FOIL request and learned that Superintendent Stallings-Harte filed the false allegations against him with the NYPD.

123.    On March 21, 2016, plaintiff received a text message from a former colleague with a picture attached.

124.    The attached picture showed the reception desk of Community School District 19, where the photo Officer Esseg took of plaintiff in the small cell at the 75th precinct had been posted on the reception area's bulletin board.

125.    Above the photo was a post-it note that read, "He's back at it," with an arrow pointing to plaintiff's picture.

126.    The post-it note also contained plaintiff's name, race, age, and height.

127.    In August 2016, Superintendent Stallings-Harte was removed from her position as Superintendent of Community School District 19.

128.    Upon information and belief, Superintendent Stallings-Harte currently serves in an administrative capacity with the DOE.

129.    Upon information and belief, defendants Essig and DOES knew all of the facts that exculpated plaintiff before they arrested him and when they initiated his prosecution.

130.    Defendants' conduct deprived plaintiff of his constitutional rights and caused plaintiff to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, harm to his reputation, financial loss, and loss of income.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Individual Defendant Officers' Violations of
### Plaintiff's Fourth, and Fourteenth Amendment Rights

131.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

132.    In committing the acts and omissions complained of herein, defendants ESSIG, and DOES acted under color of state law to deprive plaintiff of certain constitutionally protected rights

under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

    a.  the right to be free from unreasonable search and seizure;

    b.  the right to be free from arrest without probable cause;

    c.  the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent;

    d.  the right to be free from the lodging of false criminal charges against him by police officers; and

    e.  the right to be free from deprivation of liberty without due process of law.

133.    In committing the acts and omissions complained of herein, defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

134.    As a direct and proximate result of defendants' deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

135.    The unlawful conduct of defendants ESSIG, and DOES were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Violations of First Amendment Rights

136.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

137.    Plaintiff was aware of his constitutional right to voice public disapproval of the Department of Education's decisions without fear of retribution.

138.    During the incident alleged herein, plaintiff lawfully protested the removal of a principal whom he respected and enjoyed working with.

139.     Plaintiff's participation in the protest was caught on camera by a local news camera and plaintiff was interviewed by a reporter about why he was taking part in the protest. The interview was broadcast on News 12 Brooklyn.

140.     Plaintiff's statements were made publically, in front of parents, students, coworkers, and television cameras, and it was his intent that Superintendent Stallings-Harte and Chancellor Farina would hear his statements.

141.     In response to plaintiff's statements, defendant STALLINGS-HARTE filed a false report with OSI claiming plaintiff abused DOE time and harassed her during the September 17, 2015 demonstration.

142.     In response to an email plaintiff sent, defendant STALLINGS-HARTE filed a false report with the NYPD claiming he had threatened and intimidated her and her family.

143.     By virtue of the foregoing, defendant STALLINGS-HARTE intentionally deprived plaintiff of his rights secured by the First Amendment of the Untied States Constitution and as such, is liable to plaintiff under 42 U.S.C. § 1983.

144.     As a direct and proximate result of defendant STALLINGS-HARTE's deprivations of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

145.     The conduct of defendant STALLINGS-HARTE was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### THIRD CAUSE OF ACTION
**42 U.S.C. § 1983 – *Monell* claim against the New York City Department of Education**

146.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

147.     Defendants FARIÑA and STALLINGS-HARTE have directly and proximately caused plaintiff's injuries.

148.    Defendants FARIÑA and STALLINGS-HARTE possess final policymaking authority to establish municipal policy with respect to the actions at issue.

149.    Defendant FARIÑA's failure to train, supervise, and/or discipline defendant STALLINGS-HARTE resulted in defendant STALLINGS-HARTE repeatedly filing false reports with DOE investigatory bodies and/or the NYPD for constitutionally protected conduct.

150.    As a direct and proximate result of the aforesaid acts and omissions, Defendants DOE, FARIÑA, and STALLINGS-HARTE have each deprived plaintiff of his First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

151.    The acts and omissions of defendants FARIÑA and STALLINGS-HARTE explained herein were intentional, wanton, malicious, reckless, and oppressive, thus, entitling plaintiff to an award of punitive damages. In engaging in such conduct, FARIÑA and STALLINGS-HARTE acted beyond the scope of their jurisdiction and in abuse of their powers.

**FOURTH CAUSE OF ACTION**
**Violations of the New York State Constitution**

152.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

153.    Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 8, 11, and 12, and including the following rights:

f.   freedom from unreasonable search and seizure of her person and property;

g.   freedom from arrest without probable cause;

h.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiff was aware and did not consent;

19

     i.   freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants; and

     j.   freedom from deprivation of liberty without due process of law.

154.    As a direct and proximate result of defendants' deprivations of plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiff suffered the injuries and damages set forth above.

### FIFTH CAUSE OF ACTION
**False Imprisonment**

155.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

156.    Defendants STALLINGS-HARTE, ESSIG, and DOES, through the foregoing acts, caused plaintiff to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent.

157.    Defendants STALLINGS-HARTE, ESSIG, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### SIXTH CAUSE OF ACTION
**Intentional Infliction of Emotional Distress**

158.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

159.    Defendants STALLINGS-HARTE, ESSIG, and DOES through the foregoing acts, did commit extreme and outrageous conduct and thereby intentionally, and/or recklessly caused plaintiff to experience severe mental and emotional distress, pain, suffering, and damage to name and reputation.

160.    Defendants STALLINGS-HARTE, ESSIG, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### SEVENTH CAUSE OF ACTION
**Negligence**

161.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

162.    Defendants STALLINGS-HARTE, ESSIG, and DOES owed plaintiff a duty of care, including the duty to exercise due care in the course of their duties as City of New York officials and the duty to protect citizens from the intentional misconduct of other City of New York officials.

163.    Defendants STALLINGS-HARTE, ESSIG, and DOES, through the foregoing acts, negligently failed to use due care in the performance of their duties in that they failed to perform their duties with the degree of care that a reasonably prudent and careful City of New York official would have used under similar circumstances.

164.    All of these acts were performed without any negligence on the part of plaintiff and were the proximate cause of the injuries to plaintiff.

### EIGHTH CAUSE OF ACTION
**Negligent Infliction of Emotional Distress**

165.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

166.    As City of New York officials acting in the performance of their duties, defendants STALLINGS-HARTE, ESSIG, and DOES owed plaintiff a duty of care.

167.    In breach of that duty, defendants STALLINGS-HARTE, ESSIG, and DOES endangered plaintiff's safety and caused him to fear for his safety.

168.    As a result, plaintiff suffered emotional distress.

### NINTH CAUSE OF ACTION
### Defamation of Character

169.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

170.    Defendant STALLINGS-HARTE authorized the release of false information about plaintiff to the NYPD, accusing him of a serious crime.

171.    Defendant STALLINGS-HARTE knowingly made false statements to the NYPD accusing plaintiff of a serious crime.

172.    Defendant STALLINGS-HARTE authorized the release of a photo showing plaintiff in a jail cell and allowed it to be displayed in a public area.

173.    The actions of the individual defendants damaged the reputation of plaintiff.

174.    The actions of defendants were performed with malice and disregard for the truth.

175.    As a result, plaintiff suffered defamation of character.

### TENTH CAUSE OF ACTION
### Slander *Per Se*

176.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

177.    Defendant STALLINGS-HARTE authorized the release of a photo showing plaintiff in a jail cell and allowed it to be displayed in a public area.

178.    Defendant STALLINGS-HARTE knowingly made false statements to the NYPD accusing plaintiff of a serious crime.

179.    The actions of the individual defendants damaged the reputation of plaintiff.

180.    The actions of the individual defendants were performed with malice and disregard for the truth.

181.    As a result, plaintiff suffered harm to him character.

## ELEVENTH CAUSE OF ACTION
### Negligent Hiring, Training, and Supervision Under State Law

182.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

183.    The City is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants, and/or employees employed and/or the NYPD and/or the DOE with regard to their aforementioned duties.

## TWELFTH CAUSE OF ACTION
### *Respondeat Superior*

184.    Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

185.    At all relevant times, defendants FARIÑA, STALLINGS-HARTE, ESSIG, and DOES were employees of the City and were acting within the scope of their employment.

186.    The City is therefore vicariously liable under the doctrine of r*espondeat superior* for the actions of defendants FARIÑA, STALLINGS-HARTE, ESSIG, and DOES set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief against the defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)     punitive damages from defendants to the extent allowable by law;

(c)     attorney's fees;

(d)     the costs and disbursements of this action;

(e)     interest; and

(f)     such other and further relief as this Court deems just and proper.

Dated: New York, New York
       December 21, 2016

_____
Jonathan C. Moore
Keith M. Szczepanski
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

*Attorneys for Plaintiff Michael Maiglow*